Jake Weinstein v. Commissioner.
Weinstein v. Commissioner
Docket No. 11098.
United States Tax Court
1947 Tax Ct. Memo LEXIS 257; 6 T.C.M. (CCH) 351; T.C.M. (RIA) 47078; March 31, 1947
*257 F. E. Hagler, Esq., and Ed. M. Lowrance, Esq., 2804 Sterick Bldg., Memphis, Tenn., for the petitioner. Frank M. Thompson, Jr., Esq., and S. Earl Heilman, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Petitioner challenges respondent's determination of deficiencies in income tax for the calendar years 1941 and 1943 in the respective amounts of $683.21 and $5,667.35. The principal issue is whether respondent erred in including in petitioner's income for the years 1942 and 1943 [1] the entire amount of net income attributable to an alleged family partnership, the other members of which are claimed to be petitioner's wife and his father. Petitioner contends in the alternative, if no partnership is to be recognized for tax purposes, that he should be entitled to deductions in 1942 and 1943 for compensation for services rendered by the wife and father. The question applicable to 1941 is whether respondent erred in disallowing a deduction of $1,537 claimed as representing salary paid to petitioner's father in that year. Some of the facts have been stipulated. Findings of Fact The *258 stipulated facts are hereby found accordingly. Petitioner is an individual residing in Memphis, Tennessee. His income tax returns for the years involved were filed with the collector of internal revenue for the district of Tennessee. In 1930 petitioner started a small coin operating machine business under the trade name of Memphis Vending Machine Company (hereinafter sometimes referred to as the Company). The business consisted of placing coin operated machines (chiefly cigarette vending machines) in various locations, and servicing them. After the first two or three months, petitioner's father, Charles Weinstein, undertook to assist in the business even though he had another part-time job at that time. Petitioner's original investment in the business was about $500, which was used as a down payment on the machines and for merchandise for stocking the machines. The remainder of the cost of the machines was paid in monthly installments from the proceeds of the machines, usually over a period of eighteen months. Machines bought subsequently were purchased entirely from the proceeds of the business, and usually over a similar period. Petitioner and his wife, Rose Weinstein, were *259 married in 1933. They are the parents of three children, the first born in 1936 and twins born in 1940. After their marriage petitioner's wife commenced to help out her husband in his business. There was no understanding between them as to profit-sharing or salary. From the inception of the Company until 1940 the business struggled to remain in existence, averaging a profit of $35 to $40 weekly, which was taken by petitioner. During the first ten years, petitioner's father was paid no compensation, but he did from time to time receive sums from petitioner of $5 or $10. Petitioner's wife received no funds from the business until September, 1942. During the early part of 1942 she was not well and spent very little time in the office. Petitioner was the active general manager of the business. His duties consisted also of the purchase of machines, securing locations for placement of the machines, stocking and otherwise servicing them, maintaining good will and following up telephone solicitations for locations. He was available to carry on the office work. Petitioner's wife and his father, who was 72 years of age in 1941, sporadically engaged in such activities as answering the telephone, *260 inserting pennies in cigarette packages, counting receipts, and posting collections. There were on the average about ten incoming telephone calls per day, and about seven postings as a result of counting receipts from machines. Petitioner's wife, on occasion, solicited by telephone locations for machines. Her hours at the office were irregular. She sometimes made telephone calls from her residence. Since the father occupied quarters in the same building which housed the office, he was available outside business hours to answer the telephone. During all times that petitioner's wife assisted in the business, she believed that her efforts were of such nature as any wife would render. The Company employed its first full-time employee in 1937 or 1938. In 1942 and 1943 it employed two or three men. In 1939 when music machines were again allowed to operate in Memphis, additional funds were necessary for the purchase of such machines. $1,500 was borrowed from petitioner's wife's father, which was repaid from proceeds of the business. $500 additional was borrowed in 1941, which was similarly repaid. Other smaller sums were similarly borrowed from time to time and were repaid out of the *261 profits of the business. No effort was made by petitioner to borrow money from any other source. In the latter part of 1941, petitioner discussed with his accountant the matter of a family partnership. At the latter's suggestion an attorney was engaged who drew up articles of partnership between petitioner, his wife, and his father, dated January 1, 1942. It was provided therein, in part: The partners hereto own in equal shares the capital and the assets of the partnership as shown by the balance sheet attached and made a part of this Agreement, the said Rose Waldofsky Weinstein and the said Charles Weinstein having acquired their interest by an irrevocable gift made by the said Jacob Weinstein to the said Rose Waldofsky Weinstein of one-third of the net assets and to the said Charles Weinstein one-third of the net assets, and now the said Jacob Weinstein, Rose Waldofsky Weinstein and Charles Weinstein agree to become partners in the business of merchants and more specifically to handle vending machines for an indefinite term and until such time as this contract, shall be terminated by the death of either of them, or shall be terminated as hereinafter set forth. * * *
Before *262 there shall be a division of the profits or the losses of the partnership at the end of its calendar or fiscal year, there shall be paid to Jacob Weinstein the sum of Thirty-one hundred twenty dollars ($3120.00) and there shall be paid to Charles Weinstein the sum of Twentyfour hundred seventy dollars ($2470.00), which sums shall be in the nature of a salary to them for their services for each twelve months. * * *
The partners shall be entitled equally to the net profits arising from the said business and remaining after the payments of the moneys in the nature of salaries to Jacob Weinstein and Charles Weinstein as heretofore stated, which net profits shall be divided in equal shares and likewise in the event said partnership shall develop a net loss, the said net loss shall be borne by said partner in equal shares. At the end of each calendar or fiscal year of the partnership, there shall be placed to the credit of each partner or to the debit of each partner his or her share of said net profits or net losses. An appropriate gift tax return was filed by petitioner covering the interests donated to his wife and his father, and a partnership income tax return was filed for *263 the business for the first time for the year 1942. Orders for repairs to company machines, for sales of machines to the Company, and for company freight were received and honored by business contemporaries whether they came from petitioner, his father, or his wife. Bills covering the services so rendered were made in the name of the Company and paid by company check. The business had a checking account at the North Memphis Branch of the Union-Planters Bank and Trust Company, Memphis, Tennessee, during the years 1942 and 1943. A signature card on file at that bank, dated February 6, 1941, reads as follows: Memphis Vending Machine Company, Jake Weinstein owner 671 Bethel Phone 8-1438 Date 2/6/41 A signature card dated March 18, 1944, reads as follows: Memphis Vending Machine Company, Jake Weinstein, Partner, Chas. Weinstein, Partner, Rose Weinstein, Partner Number of signatures required (1) Date March 18, 1944 Assessments for licenses and taxes imposed by the City of Memphis and Shelby County, Tennessee, on mechanical music machines, pinball machines, and other machines operated by the business during the years 1941, 1942, and 1943 were in the name of Jake Weinstein or *264 in the name of Memphis Vending Machine Company, Jake Weinstein, Owner. Assessment for personalty taxes imposed by the City of Memphis and Shelby County, Tennessee, on music machines operated by the business for the years 1941, 1942, and 1943 were in the name of Jake Weinstein. On his 1941 tax return petitioner claimed as a deduction salary for his father in the amount of $1,537, which was disallowed by respondent. According to the Company's books, in 1942 and 1943 payments denominated as salary were made to petitioner, his wife, and his father as follows: Petitioner
Rose Weinstein
Charles Weinstein
1942
$3,100
$ 480
$2,385
1943
3,120
1,560
2,470
After deducting the above amounts there remained a profit in 1942 of $11,700, and in 1943 of $12,240. Checks drawn by the Company payable to Charles Weinstein on December 7, 1942, in the amount of $1,500, and September 15, 1943, in the amount of $1,125, were used to buy United States War Savings Bonds payable to Charles Weinstein, and on death of Charles, to the several sons of petitioner. The money drawn by Rose Weinstein from the business was put in bonds and real estate in the joint names of Jake *265 and Rose Weinstein. During 1942 and 1943 there was no partnership between petitioner, his wife, and his father, recognizable as such for income tax purposes. Neither petitioner's wife nor his father during any of the years involved performed services for petitioner's business for which any compensation was due. Opinion It is impossible to conclude from the record that there was such a contribution of either original capital or services of a vital or managerial character as to justify the conclusion that this family arrangement was a real and actual business partnership for Federal income tax purposes. ; . The formal partnership agreement does not purport to have come into existence until almost a dozen years after the inception of the business, but there is no contention that any significant change in the organization or operation of the business took place at or about that time. ; , affirmed (C.C.A., 4th Cir.), . And we are not persuaded that there was ever any such intention to conduct *266 a partnership business that the agreement can be viewed as a mere formalization of business relationships of long standing. Cf. (Feb. 27, 1947). We regard respondent's determination on the partnership issue as adequately supported and correct. The issue for the year 1941 and in the alternative for the remaining years is that petitioner's wife for the latter period and his father for all of the years in issue performed services for which compensation is deductible by petitioner as an ordinary and necessary business expense. We do not now need to decide whether, in an appropriate case, payments ostensibly made by a partnership to a partner can subsequently be redesignated by the interested parties as compensation to an employee for personal services rendered to a sole proprietor. We do not view this as such a case. While the record does contain some evidence to support petitioner's position, we do not on the whole consider it sufficient to sustain his burden of proof. That some services were rendered to the business by both the father and the wife we have no doubt. But that alone does not suffice. It is natural to expect that in a small enterprise *267 members of a family may within the limits of convenience and circumstance help out informally from time to time. But we are dealing here with a claimed deduction for ordinary and necessary expenses incurred in the operation of a business. A certain amount of formality, regularity, and necessity must appear. To quote from : * * * There seems to have been no legal obligation either for the [members of the family] to serve or the [petitioner] to pay. * * * There must be a showing of "continuous and substantial services in connection with the operations of his business and the production of his income." That petitioner's father lived on the premises where the business was conducted impairs the significance of his availability to answer the telephone and take messages. And that the wife was interested, and to some extent participated, is more easily explained from her own testimony as a contribution such "as any wife" would make than as a formal business arrangement, resulting in an employment, and the consequent understanding that the services so rendered would call for pecuniary compensation. On the record as a whole we conclude *268 that respondent's determination should be ssutained. Decision will be entered for the respondent. Footnotes
1. Years interrelated by statute.↩